IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

TIMOTHY BLANKENSHIP,

     Plaintiff,

v.                           CASE NO. 2:04-cv-00591

JO ANNE BARNHART,
Commissioner of Social Security,

     Defendant.

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for children's Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).  Presently pending before the court are Plaintiff's Motion for Summary Judgment, Defendant's Motion for Judgment on the Pleadings, and Plaintiff's Reply to Defendant's Motion for Judgment on the Pleadings.

Plaintiff, Timothy Blankenship (hereinafter referred to as "Claimant"), through his mother, Elizabeth Reed, protectively filed an application for child's SSI benefits on April 11, 2002, alleging

1

disability as of April 1, 2002, due to attention deficit hyperactivity disorder, allergies, and asthma. (Tr. at 52-53, 55.) The claim was denied initially and upon reconsideration. (Tr. at 35-37, 40-42.) On April 29, 2003, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 43.) The hearings were held on July 10, 2003 and August 7, 2003 before the Honorable Richard J. Maddigan. (Tr. at 265-79, 280-93.) By decision dated September 23, 2003, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 10-21.) The ALJ's decision became the final decision of the Commissioner on April 16, 2004, when the Appeals Council denied Claimant's request for review. (Tr. at 4-6.) On June 14, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

A child is disabled under the Social Security Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). Under the regulations in force during all times relevant to Claimant's claim, the ALJ must determine whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b) (2003). If the child is, he or she is found not disabled. Id. § 416.924(a). If the child is not,

2

the second inquiry is whether the child has a severe impairment.
Id. § 416.924(c).  An impairment is not severe if it constitutes a
"slight abnormality or a combination of slight abnormalities that
causes no more than minimal functional limitations."  Id.  If a
severe impairment is present, the third and final inquiry is
whether such impairment meets or equals any of the impairments
listed in Appendix 1 to Subpart P of the Administrative Regulations
No. 4.  Id. § 416.924(d).  If the claimant's impairment meets or
functionally equals the requirements of Appendix 1, the claimant is
found disabled and is awarded benefits.  Id. § 416.924(d)(1).  If
it does not, the claimant is found not disabled.  Id. §
416.924(d)(2).

In this particular case, the ALJ determined that Claimant
satisfied the first inquiry because he has not engaged in
substantial gainful activity since the alleged onset date.  (Tr. at
11.)  Under the second inquiry, the ALJ found that Claimant suffers
from the severe impairments of attention deficit hyperactivity
disorder and asthma.  (Tr. at 13.)  At the third and final inquiry,
the ALJ concluded that Claimant's impairments do not meet or equal
the level of severity of any listing in Appendix 1.  (Tr. at 13.)

Scope of Review

The sole issue before this court is whether the final decision
of the Commissioner denying the claim is supported by substantial
evidence.  In Blalock v. Richardson, substantial evidence was

3

defined as

> "evidence which a reasoning mind would accept
> as sufficient to support a particular
> conclusion. It consists of more than a mere
> scintilla of evidence but may be somewhat less
> than a preponderance. If there is evidence to
> justify a refusal to direct a verdict were the
> case before a jury, then there is 'substantial
> evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting

Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)).

Additionally, the Commissioner, not the court, is charged with

resolving conflicts in the evidence.  Hays v. Sullivan, 907 F.2d

1453, 1456 (4th Cir. 1990).  Nevertheless, the courts "must not

abdicate their traditional functions; they cannot escape their duty

to scrutinize the record as a whole to determine whether the

conclusions reached are rational."  Oppenheim v. Finch, 495 F.2d

396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the

Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was six years old at the time of the first

administrative hearing, and seven years old at the time of the

second hearing.  (Tr. at 11, 265, 280.)  He was finishing his

second year in kindergarten at the time of the first administrative

hearing. (Tr. at 288.)  By report of his mother at the second

hearing, Claimant was advancing to the first grade. (Tr. at 276.)

The Medical Record

4

Claimant's mother, Elizabeth Reed, observed that Claimant had difficulty learning before his second birthday. (Tr. at 272.) She enrolled him in preschool classes, but he did not learn his letters and numbers as the other children did. (Tr. at 272.) She testified that he had difficulty playing and interacting with other children. (Tr. at 273.)

Claimant also suffered from breathing problems and recurrent ear infections. He was diagnosed with chronic drainage from his nose to his lungs, which resulted in infections. (Tr. at 160-181, 273.) Claimant had tubes placed surgically in his ears to prevent further infection. Those tubes were eventually removed (tr. at 274); however, further surgery involving replacement of the tubes was anticipated due to Claimant's hearing loss and fluid buildup in his left ear. (Tr. at 274.)

Claimant's asthma necessitated steroid medication. (Tr. at 274.) He required daily nebulizer treatments during the winter months, and his breathing problems prevented him from participating in many physical activities and play. (Tr. at 274-5.) His need for nebulizer treatment also resulted in numerous absences from school. (Tr. at 275-6.)

Claimant was held back in kindergarten for one year before advancing to first grade. (Tr. at 276.) Claimant's mother, teachers and principal sought funding for a special teacher to work one-on-one with Claimant for an hour or two each day. (Tr. at

276.)

On February 22, 2002, William J. Curtin, M.D., F.A.A.N., evaluated Claimant neurologically upon report of his "black out" spells. (Tr. at 226.)  Dr. Curtin observed during his office exam that Claimant was hyperactive, had a decreased attention span, and was greatly distracted.   Testing for seizures was inconclusive; however, Dr. Curtin began a course of Zarontin to try and cure the "blank spells." (Tr. at 226-9.)

Claimant had also been on Ritalin for his hyperactivity since September 2001. (Tr. at 214.)

Claimant submitted his school records which included his Student Performance Key.  (Tr. at 131-5.)  The Key indicated that Claimant continuously ranked unsatisfactory in self-confidence; following directions; attention span; working well independently; starting and completing work promptly; sequencing the events of a story; hearing and imitating sounds; associating sounds with pictures; and associating sounds with letters. (Tr. at 131-4.)

A Teacher Questionnaire completed on March 11, 2003 indicated that Claimant's reading, math, and written language skills were at the kindergarten level.  (Tr. at 136.) It noted that Claimant was absent 16 days and often came in tardy. (Tr. at 136.)  The Questionnaire further indicated that Claimant had obvious problems comprehending and following oral instructions, learning new material, and recalling and applying previously learned material.

6

He had serious problems comprehending and doing math problems and applying problem solving skills in class discussions.  The teacher commented, "[Claimant] cannot do most class work independently.  He receives extra help from teacher, aide and group work from other classmates." (Tr. at 137.)

In the area of attending and completing tasks, the teacher indicated that Claimant had obvious problems paying attention when spoken to directly; focusing long enough to finish assigned activities or tasks; refocusing to task when necessary; carrying out multi-step instructions; changing from one activity to another without being disruptive; and working without distracting himself or others.  He had serious problems completing class or homework assignments, completing work accurately without careless mistakes, and working at a reasonable pace/finishing on time.  All of these were noted to be daily problems. (Tr. at 138.)

Claimant's Individualized Education Program (IEP) report stated,

> Due to deficits in the area of language (auditory processing/listening), [Claimant] cannot access the core curriculum without specialized instruction. [Claimant] is very easily distracted from the task at hand.  He has difficulty being redirected back to task, and requires frequent repetition of instructions.  [Claimant] can make associations, identify absurdities, complete sequencing activities and categorize items. He can answer "what", "where", and "when" questions, but not "who" questions.  He has difficulty with comprehension questions such as inferences, listening for the main idea and

7

predicting based upon information heard.

[Claimant's] weaknesses in the area of
language negatively affect his ability to
listen to a variety of literary forms; restate
and follow directions; follow the basic rules
for conversation (e.g. taking turns, staying
on topic); demonstrate appropriate listening
behavior (e.g. resist distractions, stay
alert, hands/feet quiet, eyes on speaker);
listen to and recite nursery rhymes; and
recognize basic comprehension concepts (e.g.
main idea, setting, sequence, retelling;
predicting.)

(Tr. at 145.)

An Elementary to High School Mental Profile was completed on
September 17, 2002. (Tr. at 182-5.) Licensed psychologist
Elizabeth A. Durham, M.A. noted that Claimant's mother reported
hyperactivity and attention deficits. Ms. Durham found that
Claimant's concentration was mildly deficient and his psychomotor
behavior was elevated (he often fidgeted with his hands and moved
around the office during the interview portion of the evaluation).
On the WISC-III, Claimant obtained a verbal IQ score of 91, a
performance IQ of 95, and a full scale IQ of 92. (Tr. at 184.)
These were in the average range. (Tr. at 185.)

Upon completion of other testing, Ms. Durham diagnosed
Claimant with Attention Deficit Hyperactivity Disorder, Combined
Type. This diagnosis was based upon his failure to give close
attention to tasks, his difficulty maintaining attention, often
forgetting things or losing things, fidgeting in his seat and
interrupting the examiner. Ms. Durham also diagnosed Phonological

8

Disorder based upon Claimant's failure to use developmentally expected speech sounds appropriate for his age and dialect. There were sound substitutions and omissions. (Tr. at 185.)

Claimant's level of social functioning was mildly deficient. He interacted appropriately with the psychologist during testing, but acted inappropriately when his mother was present, moving around the office and defying her requests that he be seated. (Tr. at 185.)

Ms. Durham also determined that Claimant's concentration and persistence were mildly deficient. (Tr. at 185.) His pace was within normal limits.

Claimant's teacher completed a Classroom Teacher Report on October 21, 2002. (Tr. at 146-7.) She reported that Claimant was usually last to finish his work, that teachers had to repeat directions to him several times, and had to help him complete his work. She noted that he had trouble following directions and could not work independently. He did not seem to retain information for a long period of time, and was much slower than other children in completing his work. (Tr. at 146.)

Claimant's Present Level of Performance form for the year 2002-2003 showed a verbal score of 82, performance score of 73, and full scale score of 76 on the WISC-III. His teacher noted again that he was slow to complete work, did not work well independently, was easily distracted, and did not remain on task. Due to his

hyperactivity, Claimant began assignments before being given directions, interrupted teachers, did not comply with rules, and ignored the consequences of his behavior.  (Tr. at 150.)

Notes from Logan Mingo Mental Health on June 13, 2002 reveal that Claimant was "extremely hyper", opening the door, running in the hall, and constantly moving during the interview.  Claimant would not listen, placed his feet on the table, disturbed the windows and blinds in the room, and was fidgety, loud, and whiny. His mother "couldn't do much with him." (Tr. at 236.)  A course of medication was begun which seemed to provide some relief. (Tr. at 237.)  However, there were no records of treatment beyond June 2002.

James Binder, M.D. completed a Childhood Disability Evaluation form on October 20, 2002.  (Tr. at 188-93.)  He opined that Claimant suffered from ADHD and asthma, which were severe impairments, but which did not meet, medically equal, or functionally equal the Listings.  (Tr. at 188.) He noted less than marked limitations within the domains of Acquiring and Using Information, Interacting and Relating with Others, Moving About and Manipulating Objects, and Caring for Yourself.  He noted no limitation in Claimant's Health and Well-Being.  He noted marked limitations in the domain of Attending and Completing Tasks. (Tr. at 191-2.)

Uma  Reddy,  M.D.,  in  consultation  with  LaRee  Naviaux,

psychologist, and Rosemary L. Smith, Psy.D., completed a Childhood Disability Evaluation Form on March 19, 2003.  (Tr. at 238-43.) They determined that Claimant suffered from ADHD and asthma, which were severe, but which did not alone or in combination meet, medically equal or functionally equal the Listings.  (Tr. at 238.) In the domain of Acquiring and Using Information, the doctors indicated that Claimant had less than marked limitations; in the domain of Attending and Completing Tasks, he had marked limitations.  In the domains of Interacting and Relating with Others, Moving Around and Manipulating Objects, and Caring for Yourself, he had less than marked limitations.  He had no limitation in the domain of Health and Physical Well-Being.  (Tr. at 241-2.)

Claimant was instructed to attend the first administrative hearing. However, Claimant would not sit still and was so disruptive during the hearing that the ALJ reprimanded him directly.  (Tr. at 289.)  Thereafter, when Claimant's disruptive behavior persisted, the ALJ continued the remainder of the hearing. (Tr. at 292.)  The hearing was rescheduled and Claimant was instructed not to attend.  (Tr. at 292.)

At the second administrative hearing, Claimant's mother advised that Claimant had been promoted to the first grade and was in regular classes, with one to two hours a day individualized instruction. (Tr. at 276.)

11

Following the initial motions in this case, Claimant filed a Reply to Defendant's Motion for Judgment on the Pleadings. The Reply incorporated documents which were mailed by Claimant's attorney to the Appeals Council on December 11, 2003, and expressed concern that these may not have been included in the case record. The court has examined its file and found that all of these records were included in its transcript at pages 253-264, designated as Exhibit AC-3. (Tr. at 253-64.) Pertinent parts of this record include Claimant's IEP for the school year 2002-2003, which indicated a WISC-III verbal score of 89, performance score of 71, and full scale score of 78. The IEP further notes that Claimant has deficiencies in all areas of adaptive functioning. He has mild fine motor skills deficits and visual perception weaknesses which impair his ability to read, write, spell and complete arithmetic assignments at an age appropriate level. (Tr. at 253.) The records reflect that Claimant was introduced to special education classes. (Tr. at 260-4.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ erred in finding that Claimant's severe impairment(s) did not functionally meet or equal a Listing; (2) the ALJ failed to consider the impact and combination of Claimant's physical impairments upon other domains. (Pl.'s Br. at 7-13.) The Commissioner responds that

12

Claimant was only markedly limited in one domain according to the reports of various state agency sources; hence, the ALJ's decision was supported by substantial evidence. (Def.'s Br. at 9-12.)

Child disability cases are analyzed under a three-step process.  The child must show (1) that he was not working; (2) that he had a "severe" impairment or combination of impairments; and (3) that his impairment or combination of impairments met or equaled a Listing; i.e., the impairments medically or functionally equaled the severity of an impairment in the Listings.  20 C.F.R. § 416.924 (2003).

In this case, the ALJ determined that Claimant was not working and that he had "severe" impairments of attention deficit hyperactivity disorder and asthma.  (Tr. at 11, 13.)  He found, however, that Claimant's impairments did not meet or equal a Listing.

Claimant argues that the ALJ erred in this finding.  First, he contends that the ALJ was required to perform an individualized functional assessment considering the nature of Claimant's impairments; his age; his ability to perform age appropriate daily activities; and his level of independent, appropriate and effective functioning pursuant to 20 C.F.R. § 416.924a.  He argues that pursuant to 20 C.F.R. § 416.924b(d), the ALJ should have considered the fact that his functional limitations arose before he reached age 6, and thereby might have

13

a greater and more limiting effect on his overall growth and development. (Pl.'s Br. at 7-8, <u>citing</u> 20 C.F.R. § 416.924b(d)).

The regulations cited by Claimant are not those which correspond to the date of the ALJ's decision (2003). The 2003 regulations provide that age may or may not be a factor in determining whether an impairment meets or medically equals a Listing. While age remains an important factor in considering severity, the analysis cited by Claimant is not included in the regulation. 20 C.F.R. § 416.924b(a)(2003).

In this case, the ALJ considered the description of Attention Hyperactivity Disorder found at § 112.11 of 20 C.F.R. Pt. 404, Subpart P, App. 1, which states the required levels of severity specific to that condition. The appendix states that the required level of severity is met when there are <u>medically documented</u> findings of <u>all three</u> of the following: (1) marked inattention; (2) marked impulsiveness; and (3) marked hyperactivity.[1]

As the ALJ noted, three state agency medical sources (James Binder, M.D., Uma Reddy, M.D., and Rosemary Smith, Ph.D.) reviewed Claimant's records and uniformly concluded that Claimant did not have marked limitations in any of these areas. (Tr. at

---

[1] The regulations further require that these impairments result in at least two of the appropriate age-group criteria listed in paragraph B2 of 112.02. However, since Claimant does not meet the "A" criteria, the analysis ends.

13, <u>citing</u> tr. at 188-93; 238-43.)  Claimant presents no medical evidence to oppose these opinions; indeed, it appears that no medical source has opined that Claimant was limited to this degree by his ADHD.  Absent medical documentation in this area, Claimant fails to meet the Listing criteria.

The ALJ further considered the degree of Claimant's asthma under 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 103.03.  To establish the required level of severity under that section, attacks must occur in spite of prescribed treatment and require physician intervention at least once every two months or at least six times a year.  20 C.F.R., Pt. 404, Subpt. P, App. 1, § 103.03 (2003)[2].  Claimant has not required physician intervention for his attacks since he was two and one-half years of age.  (Tr. at 287-8.)  Hence, he did not meet the Listing for asthma.

The ALJ next evaluated whether Claimant had an impairment which functionally equaled a Listing.  Under this analysis, set forth at 20 C.F.R. § 926a(b)(1), six domains are considered: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being.  To functionally equal a Listing, an

---

[2] In the alternative, the regulations require persistent low-grade wheezing between acute attacks or absence of extended symptom-free periods of a specified degree.  Claimant does not allege these symptoms.

15

impairment or combination of impairments must result in "marked" limitations in two domains or an "extreme" limitation in one domain.

In this case, the ALJ found that Claimant was markedly limited in the domain of attending and completing tasks. (Tr. at 16.)  Claimant argues that he was likewise markedly limited in the domain of acquiring and using information, and that the ALJ erred by failing to make such a finding.

The regulations provide that the Commissioner will consider functional limitations resulting from all impairments, and that all the relevant information in the case record that helps determine functioning will be considered, including signs, symptoms, and laboratory findings, and descriptions of functioning from parents, teachers and other people. 20 C.F.R. § 416.926a(e)(1)(2003). A "marked" limitation is found when the impairments interfere seriously with the individual's ability to independently initiate, sustain, or complete activities.  Day to day functioning may be seriously limited when impairments limit only one activity or when the interactive and cumulative effects of the impairments limit several activities.  20 C.F.R. § 416.926a(e)(2)(2003).  A "marked" limitation is one that is more than "moderate" but less than "extreme." 20 C.F.R. § 416.926a(e)(11)(2003).

Within the realm of acquiring and using information, the

16

Commissioner considers how well a child acquires or learns information, and how well he uses the information he has learned. 20 C.F.R. § 416.926a(g)(2003). Children age 3 to attainment of age 6 should begin to learn the skills of listening to stories, rhyming words, and matching letters, in preparation to read. Counting, sorting shapes, and building are skills needed to learn math. Painting, coloring, copying shapes, and using scissors are skills needed to learn to write. Using words to ask questions, give answers, follow directions, describe things, explain what they mean, and tell stories allows them to share knowledge and experience of the world around them. Children should have these skills by first grade. 20 C.F.R. § 416.926a(g)(iii)(2003).

Children ages 6 to attainment of age 12 (entering elementary school) should be able to learn to read, write and do math, and discuss history and science. 20 C.F.R. § 416.926a(g)(iv)(2003).

In this case, the ALJ found that Claimant had less than a marked limitation within this domain. First, he cited Claimant's achievement test scores, which he remarked were "all rated satisfactory or above." (Tr. at 16.) However, substantial conflict exists among the test scores, which raises questions as to their validity. Claimant underwent WISC-III testing on August 7, 2002 and September 23, 2002, and obtained a verbal score of 82, a performance score of 73, and a full scale score of 76. (Tr. at 150.) The WISC-III test conducted on September 17, 2002

yielded a verbal score of 91, performance score of 95, and a full
scale score of 92. (Tr. at 184.)  The WISC-III included on the
Summary of Evaluation Data form for 2002-2003 indicates a verbal
score of 89, a performance score of 71, and a full scale score of
78.  (Tr. at 253.) This wide divergence suggests that one or more
of the tests was unreliable.  However, the ALJ does not address
that point, but apparently considers all the results valid.

Next, the ALJ stated that Claimant's kindergarten
performance was rated as average in April of 2003.  (Tr. at 16,
citing tr. at 122.) However, at the same time, the Summary of
Evaluation Data form (2002-2003) indicated that Claimant refused
to participate, did not know alphabet letters and sounds, rushed
through assignments, did not listen, needed directions repeated,
failed to complete assignments, did not remain on task, and
failed to work independently.  (Tr. at 253.) The Present Level of
Performance report dated 2002-2003 indicates that Claimant's
responses were slow, that he was slow to complete work, that he
did not work well independently, and that he was weak in the area
of utilization of practical information involved in everyday
problem-solving situations, short-term memory and speed of mental
operation.  His weaknesses were reading and spelling.  (Tr. at
150.)  The Classroom Teacher Report indicated that Claimant could
identify numbers 1 and 2, and could write his first name.  The
teacher noted that Claimant had trouble following directions and

18

did not seem to retain information for long periods of time. (Tr. at 146.)

In similar fashion, the Student Performance Key indicates Claimant's below satisfactory performance in recognizing numbers 1 to 10, writing numbers 1 to 10, identifying missing numbers in a sequence 1 to 10, identifying one more or one less, writing numbers 1 to 20, telling time by the hour, and identifying missing numbers in sequence 10 to 20. Claimant could not satisfactorily retell a story, sequence events in a story, hear or imitate sounds, associate sounds with pictures or sounds with letters, hear rhyming words, or understand the main idea of a story. (Tr. at 133.) He could not color within the lines, use correct spacing, or print or spell his first and last name correctly. (Tr. at 134.)

A Teacher Questionnaire dated March 11, 2003 indicated that Claimant could not do most class work independently, and that he received extra help from teachers, aides and group work from classmates. (Tr. at 137.) He had serious problems with his ability to comprehend and do math problems and to apply problem-solving skills in class discussion. (Tr. at 137.)

Claimant's teacher reported in April of 2002 that his weaknesses in the area of language negatively affected his ability to listen to a variety of literary forms, restate and follow directions, follow the basic rules for conversation,

listen to and recite nursery rhymes, and recognize basic comprehension concepts. (Tr. at 145.) His IEP stated that he needed a special auditory-visual-kinetic learning forum.

The ALJ did not discuss any of this information in his analysis. He did not address the conflicts between this evidence and that which he cited in support of his opinion. However, it is the ALJ's duty to resolve inconsistencies in the evidence. "In reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the Secretary." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). See also Smith v. Chater, 99 F.3d 635, 637 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court.") Moreover, the regulations state, "If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all of the evidence and see whether we can decide whether you are disabled based on the evidence we have." 20 C.F.R. § 416.927(c)(2)(2003). The ALJ failed to address inconsistencies in the record on this point.

The ALJ further erred by failing to state the weight he ascribed to the various items of evidence, and in failing to explain why he discounted or rejected the items above. The regulations indicate that information from parents, teachers and

20

others who could describe functioning will be considered. 20
C.F.R. § 416.926a(b)(3)(2003). The Commissioner is instructed to
consider all of the relevant information in the case record when
deciding whether the medically determinable impairments resulted
in a marked or extreme limitation in the domain of acquiring and
using information.  20 C.F.R. § 416.926a(g)(3)(2003)(emphasis
added). The ALJ omitted any discussion of these items of
evidence, and the court cannot discern his rationale.

Section (g)(3) of this same regulation lists examples of
limitations which may be marked or extreme, including difficulty
recalling information learned yesterday, solving mathematics
problems, and having difficulty explaining what is meant.  Id.
The ALJ failed to consider these examples of limitations, some of
which Claimant appears to exhibit.  While the listed examples do
not establish per se marked or extreme limitations, the fact that
Claimant's problems so nearly match them warrants consideration.

For these reasons, the court proposes that the presiding
District Judge find that the Commissioner's decision is not
supported by substantial evidence in this regard, and remand this
matter for resolution of conflicts in the evidence and a thorough
evaluation of all the evidence pertaining to the second domain,
"Acquiring and Using Information."

Claimant's remaining arguments concerning combination of
impairments, specifically the impact of his physical impairments

upon his other impairments, are not persuasive.  As the ALJ
noted, Claimant has not been hospitalized for his respiratory
problems since he was two years of age. (Tr. at 20, <u>citing</u> tr. at
287-8.)  He did not need to use his nebulizer even one time
during the six months preceding the opinion.  (Tr. at 20, <u>citing</u>
tr. at 124.)  Claimant's mother reported that he had improved
after his medication was adjusted, and that he had no difficulty
sleeping.  (Tr. at 115, 182.)  The ALJ found that Claimant's
asthma and allergy attacks did not keep him from usual daily
activities.  (Tr. at 20.)  Claimant argues with these findings,
but offers no evidence in rebuttal; hence, his arguments fail.

The court proposes that the presiding District Judge find
that the Commissioner's decision concerning the impact of
Claimant's physical impairments upon his other impairments is
supported by substantial evidence.

For the reasons set forth above, it is hereby respectfully
**RECOMMENDED** that the presiding District Judge **GRANT** the
Plaintiff's Motion for Judgment on the Pleadings, to the extent
of a remand; **DENY** the Defendant's Motion for Judgment on the
Pleadings; **REVERSE** the final decision of the Commissioner; **REMAND**
this case for further proceedings pursuant to the fourth sentence
of 42 U.S.C. § 405(g), and **DISMISS** this matter from the court's
docket.

The parties are notified that this Proposed Findings and

Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a

waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

June 14, 2005
Date

Mary E. Stanley
United States Magistrate Judge